IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CANDACE SITTNER, on behalf of herself and all others similarly situated,          ) ) ) | Civil Action No.: 4:15-CV-05043-RBH |
| Plaintiff,          ) ) ) | |
| v.          ) ) | **ORDER** |
| COUNTRY CLUB, INC. d/b/a THE MASTERS CLUB; and MIKE KAP, individually,          ) ) ) ) | |
| Defendants.          ) ) | |

This matter is before the Court after Defendant Country Club, Inc. filed its motion to dismiss complaint and compel arbitration, or in the alternative, stay litigation. [ECF #6 and #7].[1] Both parties have had the opportunity to extensively brief the issues raised in the motions, and this Court has thoroughly considered all pleadings filed in this case.[2]

**Factual Background and Procedural History**

Plaintiff Candace Sittner ("Ms. Sittner") brought this action on or about December 23, 2015, individually and as a collective action for unpaid minimum wages and unpaid overtime wages, for liquidated damages, and for other relief under the Fair Labor Standards Acts of 1938, as amended, 29 U.S.C. § 201, et seq. (the "FLSA"). [ECF #1]. Ms. Sittner also brings this action pursuant to the South Carolina Payment of Wages Act, South Carolina Code Ann. § 41-10-10, et

---

[1] It appears Defendant Country Club, Inc. filed the same motion raising the same issues twice. [ECF #6 and #7]. Thus, this Court's analysis will address both outstanding motions.

[2] Under Local Civil Rule 7.09 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

seq. (The "SCPWA"). As alleged by Ms. Sittner, Defendant Country Club, Inc. d/b/a as The Masters Club ("The Masters Club") is a corporate entity organized under the laws of the state of South Carolina and doing business in Horry County. [ECF #1, p. 2]. Defendant Kap is a citizen and resident of Horry County, South Carolina, and an owner of The Masters Club. [ECF #1, p. 2]. In March 2014, The Masters Club hired Plaintiff to be a "shooter girl," requiring her to purchase alcohol from The Masters Club and sell that alcohol to its customers. [ECF #1, p. 4]. Plaintiff maintains she was classified as an independent contractor, but in reality she alleges she was an employee of The Masters Club under the applicable legal standards. [ECF #1, p. 4]. She further maintains that in March 2015, she was paid less than the statutory minimum wage owed to her pursuant to the FLSA. She subsequently brought claims for failure to pay minimum wage, failure to pay overtime wages, violations of the SCPWA, unlawful kickbacks, and retaliation. [ECF #1]. In conjunction with her complaint, Plaintiff filed consents of two other employees to the claims in the lawsuit. [ECF #1-2; ECF #1-3]. Plaintiff's complaint alleges she is bringing her claims on behalf of herself and others "similarly situated". [ECF #1, p. 1].

On January 15, 2015, The Masters Club filed a motion to compel arbitration and a motion to dismiss the complaint. [ECF #6; ECF #7]. The Masters Club argues that Ms. Sittner signed an arbitration agreement wherein she agreed to bring the claims at issue in this lawsuit before an arbitrator. [ECF #6, p. 2; ECF #7, p. 2]. Specifically, the agreement provides that, "[n]either THE CLUB nor you can file a civil lawsuit in court against the other party relating to any covered claims. If a party files a lawsuit in court to resolve claims subject to arbitration, both parties agree that the court shall dismiss the lawsuit and require the claim to be resolved through arbitration."

[ECF #6-1, p. 3; ECF #7-1, p. 3]. The arbitration agreement also provides that any "covered claim" that you may have against the THE CLUB, its owners, directors, officer, managers, employee or agents" must be submitted "exclusively to and determined exclusively by binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq." [ECF #6-1].[3]

## Standard of Review

Defendant files its motion pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA"). The parties appear to be in agreement that the currently-pending claim is subject to arbitration, given that Plaintiff acknowledges signing the agreement. [ECF #17, p. 2]. Whether the parties have agreed to arbitrate their disputes is a jurisdictional question. *See Bhd of Ry. & S.S. Clerks v. Norfolk S. Ry. Co.*, 143 F.2d 1015, 1017 (4th Cir. 1944). For the purposes of deciding a motion to compel arbitration, the court may properly consider documents outside the pleadings. *Joyner v. GE Healthcare*, No. 08-2563, 2009 WL 3063040 at *2 (D.S.C. Sept. 18, 2009).

## Discussion

Here, Plaintiff has not denied the existence or validity of a valid arbitration agreement. Likewise, Plaintiff argues that one of the two individuals who filed consents in this case, Emily Samuels, is also subject to an arbitration agreement. In response to Defendant's motion, Plaintiff's sole contention is that the motion to compel arbitration is premature because she intends to move for class certification in this case in the future; therefore, this Court should defer any ruling on

---

[3] Notably, only one Defendant is bringing the motion to dismiss complaint and compel arbitration, or in the alternative stay litigation. Plaintiff has also alleged several claims against Defendant Kap, as both owner of The Masters Club, and individual claims against Defendant Kap for retaliatory acts and for failure to take steps to remedy unlawful conduct. [ECF #1, p. 10]. Neither party has addressed whether the arbitration agreement in question covers the claims brought against Defendant Kap.

3

arbitration prior to the determination as to class certification. The issue thus raised before this Court is whether the Court is required to defer ruling on an arbitration agreement that two individuals executed until it has certified a class and provided notice to all putative class members of this lawsuit. [ECF #18, p. 2]. Defendant argues that the arbitration agreement is valid and enforceable at least as to the only named member of this lawsuit, and therefore Plaintiff must arbitrate her claims. Plaintiff acknowledges she has not yet moved for conditional certification in this case. [ECF #17, p. 1]. Accordingly, at this time there is no motion for class certification before this Court. The issue of whether the three individuals who have currently been identified in this lawsuit should have their claims tried as separate actions has not been briefed by the parties in this case.

Defendant maintains these claims must be submitted to arbitration pursuant to a signed agreement. Defendant's argument is straightforward: Plaintiff signed an arbitration agreement approximately fifteen months prior to filing this civil action requiring her to submit all covered claims, including the claims before this Court. [ECF #6, pp. 1-2; ECF #7, pp. 1-2]. Plaintiff acknowledges that approximately six months after working for Defendant, she signed the arbitration agreement in question. [ECF #17, p. 2]. Likewise, Plaintiff does not dispute the validity of her signature, or otherwise argue that the arbitration agreement is unenforceable. Instead, Plaintiff points out that one of the individuals who has filed a consent pursuant to 29 U.S.C. § 216(b) in this case, Ms. Brittany Sloan, did not sign an arbitration agreement. This assertion is apparently based on the fact that Defendant has not claimed Ms. Sloan signed an arbitration agreement. [ECF #1-2, 1-3; ECF #17, p. 2]. The only other individual who has filed

4

a consent a this time, Ms. Emily Samuels, apparently signed an arbitration agreement in October 2014, according to Plaintiff. [ECF #17, p. 2].

Plaintiff argues that a motion to compel arbitration is premature at this stage of litigation because this case involves a potential class or collective action involving at least one individual who may not have signed an arbitration agreement. Plaintiff asserts this Court must certify the class and distribute notices to putative class members prior to ruling on any motion to compel arbitration or ruling on the enforceability of the arbitration agreement affecting some or all of the putative class. [ECF #17, p. 2]. Defendant contends that this is not the law in this jurisdiction. [ECF #18].

In the Fourth Circuit, a litigant may compel arbitration upon a showing that pursuant to the FAA, there is (1) a dispute between the parties; (2) a written agreement that includes an arbitration provision covering the dispute; (3) the relationship of the transaction to interstate or foreign commerce; and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-501 (4th Cir. 2002) (citing *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). In its motion, Defendant has alleged that all four elements have been met in this case. Indeed, Plaintiff acknowledges signing the arbitration agreement, and she does not otherwise dispute the existence of a valid agreement on any other grounds. A review of the arbitration agreement reveals that it appears to cover the claims in question because the "covered claims" include FLSA actions and common law actions regulating employment termination, misappropriation, and the law of contract. [ECF #7-1]. The FAA requires that the commerce involved in the contract be interstate or foreign. *Soil Remediation Co. v. Nu-*

5

*Way Environmental, Inc.*, 323 S.C. 454 (1996) (citing *Timms v. Greene*, 310 S.C. 469, 427 S.E.2d 642 (1993), *overruled on other grounds*). "Commerce" is further defined in the FAA as "commerce among the several States or with foreign nations...." 9 U.S.C. § 1; *see also Mathews v. Fluor Corp.*, 312 S.C. 404, 407 (1994) ("Commerce, as defined in the Act [FAA], evidences transactions involving interstate or foreign commerce."). Plaintiff alleges within her complaint that Defendant was engaged in interstate commerce or in the production of goods for commerce pursuant to the FLSA. [ECF #1, p. 5]. Finally, the fact that Defendant has filed this motion evidences a willingness to arbitrate these claims. Plaintiff has not contested any of these elements concerning the existence of a valid arbitration agreement, nor does she contest the enforceability of the agreement. Accordingly, this Court finds that a valid and enforceable arbitration agreement exists between Plaintiff and The Masters Club.

      Plaintiff cites to a series of cases she believes reveal that courts in other jurisdictions have agreed to provide notice to all putative class members and let putative class members opt-in to a case prior to ruling on the enforceability of an arbitration agreement. [ECF #17, p. 1]. However, a close review of these cases does not support Plaintiff's argument as it relates to the facts in this case. In *D'Antuono v. C&G of Groton, Inc.*, No. 3:11-cv-33, 2011 WL 5878045 (D. Conn. Nov. 23, 2011), the contested issue was whether Plaintiff met the standard of showing that there were "other employees similarly situated" under 29 U.S.C. § 216(b) to provide notice to these potential opt-in plaintiffs. The district court in that case had already made a prior finding that an arbitration agreement was enforceable as to two of the three plaintiffs who had signed the arbitration agreement and had closed the case as to those two plaintiffs, as they were required to arbitrate

6

their claims. *D'Antuono*, 2011 WL 5878045 at *2.

The *D'Antuono* Court considered what effect the prior finding of an enforceable arbitration agreement as to some plaintiffs had on future opt-in plaintiffs and determined that some courts were willing to authorize notice before considering whether certain opt-in plaintiffs would also be subject to an arbitration agreement. *Id.* Still, in *D'Antuono* the court had already determined that the plaintiff was subject to a valid arbitration agreement, prior to providing notice to the potential class members. Therefore, some plaintiffs were pursuing claims in arbitration, while at least one plaintiff was pursuing claims in federal court.[4] Here, Plaintiff is likely not a proper representative for a potential class action because she is subject to arbitration. Further, unlike *D'Antuono,* there is currently no motion for notice to potential class members or motion for conditional certification before this Court.

Likewise, in *Sealy v. Keiser Sch., Inc.*, No. 11-61426-CIV, 2011 WL 7641238 (S.D. Fla. Nov. 8, 2011), the procedural posture of the parties is distinguishable from the present case. At issue was whether the Plaintiff met the "similarly situated" requirement in 29 U.S.C. § 216. Several plaintiffs had already opted in to the lawsuit prior to the plaintiff filing a motion to notify other potential class members. As one of several arguments opposing the motion, Defendant argued that a majority of its employees signed arbitration agreements; therefore, Plaintiff could not meet the "similarly situated" requirement under 29 U.S.C. § 216. *Sealy*, 2011 WL 7641238, at *3.

---

[4] The *D'Antuono* Court determined that the existence of other arbitration agreements was immaterial to the issue of class certification. Noting that it was unusual to have previously determined that two of the plaintiffs were subject to valid arbitration agreements, the *D'Antuono* Court concluded that determination does not automatically apply to other individuals. Thus, the applicability of the enforceability of some arbitration agreements determined on an individual basis should not prevent class certification. *Id.* at *4.

The *Sealy* Court allowed for notice without analyzing or otherwise providing any guidance with respect to the fact that some future class members may be subject to an arbitration agreement. *Id.* at *3-4.

In *Ali v. Sugarland Petroleum*, No. 4:09-cv-0170, 2009 WL 5173508 (S.D. Tex. Dec. 22, 2009), the plaintiff sought class notice to potential class members. The defendants raised the fact that it was the potential class members who were not yet involved in the lawsuit who allegedly signed arbitration agreements as an argument against providing notice to these potential plaintiffs of the pending lawsuit. The Court determined that it would make this determination of whether those potential plaintiffs would have to arbitrate their potential claims upon the close of discovery. *Id.* at *4.

Finally, in *Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884, 2011 WL 1772401 (D. Col. 2011), the district court was again considering whether defendants could seek judicial enforcement of an arbitration provision executed by certain members of the putative class. The District Court of Colorado explained: "[t]he named plaintiff is the only plaintiff before the court at this time. By filing this suit, she has chosen a judicial rather than arbitral forum to resolve her dispute with defendants and defendants *properly could seek to compel arbitration* as to plaintiff pursuant to 9 U.S.C. § 4." *Whittington*, 2011 WL 1772401, at *5 (emphasis added). Indeed, the district court explained that defendants had not satisfied their burden to present evidence of an enforceable agreement as to plaintiff because they did not provide an agreement executed by the plaintiff. In this case, not only has Defendant produced a copy of the agreement, but also Plaintiff acknowledges its existence.

8

This Court finds instructive the analysis found in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002). In *Adkins*, The Fourth Circuit Court of Appeals affirmed a district court's granting of a motion to compel arbitration where a plaintiff filed a class action lawsuit alleging violations of the FLSA and state law wage claims. The *Adkins* plaintiff brought his suit as a proposed FLSA class action, and he filed sixty-three consent forms from current and former employees who wished to join the action. *Id.* at 499. The defendant filed a motion to compel arbitration and stay proceedings, based on an arbitration agreement signed by the named plaintiff and the sixty-three individuals who signed consent forms. *Id.* The defendant argued successfully to the district court that it had a valid arbitration agreement that covered plaintiff's claims and should therefore be enforced. *Id.* at 500. In affirming the district court's granting of the motion, the Fourth Circuit Court of Appeals reasoned that the FAA requires a court to stay "any suit or proceeding" that is pending arbitration of any issues "referable to arbitration under an agreement in writing for such arbitration." *Id.* at 500; 9 U.S.C. § 3. The Fourth Circuit also made clear that FLSA claims may be properly resolved in arbitration proceedings, provided a valid arbitration agreement. *Adkins*, 303 F.3d at 506.

A district court is required to stay litigation where a valid arbitration agreement exists between the parties and the issues in the case are covered by the arbitration agreement. *Id.* The Fourth Circuit in *Adkins* did not directly address what effect the ruling had on the sixty-three individuals who filed consents, but it made clear that if a plaintiff entered into a valid arbitration agreement and the claims brought forth in the lawsuit are covered by the agreement, then the court was required to submit those claims arbitration, regardless of whether other individuals received

9

notice of the lawsuit, who may have valid arguments against arbitrating their claims. Here, it appears from the pleadings that of the two individuals who filed consents, at least one may have signed an arbitration agreement. Certainly, Plaintiff acknowledges that she has signed an arbitration agreement; therefore, regardless of whether a class is later certified, she is subject to the arbitration provision. The question of whether either of the two individuals who filed consents, Ms. Samuels and Ms. Sloan, will also be compelled to arbitration is not before the Court at this time.

## Conclusion

The Court has thoroughly reviewed the entire record, including the pleadings, Defendant's motion to dismiss, Plaintiff's response to the motion, Defendant's reply, and the applicable law. For the reasons stated above, Defendant's motions to dismiss plaintiff's amended complaint and to compel arbitration, or in the alternative stay litigation [ECF #6 and ECF #7] are **GRANTED.** Plaintiff's complaint [ECF #1] is **STAYED** pending the outcome of the arbitration.[5] The parties involved in the arbitration proceeding must complete arbitration within six months from the date of this Order. At the conclusion of six months from the date of this Order, the Clerk is instructed to lift the stay in this case, unless notified by the parties to lift the stay at an earlier date.

---

[5] 9 U.S.C. § 3 provides for a stay of proceedings in federal district courts when an issue in the proceeding is referable to arbitration. The Court has the discretion to dismiss the claim in its entirety if the Court finds the entire claim is covered by an arbitration agreement and no further controversies exists between the parties. *Burke v. Resurgent Capital Services, L.P.*, No. 6:06-0282, 2006 WL 1302448, at *5 (D.S.C. May 10, 2006). Here, only one Defendant has sought to compel arbitration against the named Plaintiff. Plaintiff's alleged claims against Defendant Kap, as well as alleged claims involving the individuals who filed consents pursuant to 29 U.S.C. § 216(b) remain outstanding. Accordingly, this Court is staying these proceedings pursuant to 9 U.S.C. § 3.

10

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
July 13, 2016  R. Bryan Harwell
United States District Judge